```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


TAJUAN HOLLOMAN,
        Plaintiff,

        v.                              CIVIL ACTION NO.
                                        14-12594-DPW
HAROLD CLARKE, et al.
        Defendants.
```

MEMORANDUM AND ORDER

WOODLOCK, D.J.

On June 9, 2014, plaintiff Tajuan Holloman ("Holloman"), formerly in custody as a pre-trial detainee at the Suffolk County Jail and currently in custody at MCI Shirley, filed a pro se complaint pursuant to 42 U.S.C. § 1983 seeking monetary and declaratory relief. By Order dated July 28, 2014, plaintiff's motion to proceed in forma pauperis was granted and Holloman was assessed an initial, partial filing fee. See Docket No. 5. On April 8, 2015, plaintiff's motion to transfer the name of the lead defendant was granted. See Docket No. 14.

Because Holloman is a prisoner proceeding in forma pauperis, his complaint is subject to preliminary screening. See 28 U.S.C. § 1915 (proceedings in forma pauperis); 28 U.S.C. § 1915A (screening of prisoner suits against governmental officers and entities). For the reasons state below, the Court directs summons to issue as to the following eleven (11) defendants: Gill, Ferrarra, Maine, Mendonsa, Spencer, O'Dell, Gelb, Ladouceur, Owens, Fedel and Diagneault. The claims against

defendants Deakin, Clarke, Bender, Russo, Brodbeck, Maenpaa, Thornton, Berdard, Williams, Fasoli, Tocci, Palodian, MacDonald, Rodrigues and Wendover shall be dismissed in 42 days of the date of this Memorandum and Order unless Holloman demonstrates good cause, in writing, why his claims against these remaining defendants should not be dismissed for the reasons stated below.

SCREENING

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). In forma pauperis complaints may be dismissed sua sponte and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. Neitzke, 490 U.S. at 327-328; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state

2

a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the factual allegations in a complaint must "possess enough heft" to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [the Court] to draw on [its] judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quotation marks omitted). Dismissal is appropriate if the complaint fails to set forth factual allegations respecting each material element necessary to sustain recovery under a legal theory. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).

In conducting the preliminary screening, the Court construes Holloman's pro se complaint generously. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Rodi v. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).

## BACKGROUND

Plaintiff's civil rights complaint consists primarily of a recounting of events beginning with Holloman's 2010 transfer from the Suffolk County Jail to MCI Concord as a pre-trial detainee and continuing through several subsequent events occurring at the

Souza Baranowski Correctional Center from 2010 through 2013.

The fifty-two page complaint is brought against the following twenty-six (26) correctional officials and employees: (1) Harold Clarke, former Commissioner of the Massachusetts Department of Correction ("DOC"); (2) James Bender, former Deputy Commissioner of the DOC; (3) David Deakin, Assistant District Attorney for Suffolk County; (4) Bruce Gelb, former Superintendent of MCI Concord; (5) Lois Russo, former Deputy Superintendent of Operations at MCI Concord; (6) John Brodbeck, former Director of Security at MCI Concord; (7) Jorma Maenpaa, former Director of Security at MCI Concord; (8) Anthony Mendonsa, Superintendent and former Deputy Superintendent at the Souza Baranowski Correctional Center ("SBCC"); (9) Luis Spencer, Commissioner of Correction; (10) Nick Palodian, SBCC mail clerk; (11) Thomas Tocci, SBCC grievance coordinator; (12) Amy Owens, SBCC Treasurer; (13) Pamela O'Dell, SBCC grievance coordinator; (14) Kristie Ladouceur, DOC Administrative Resolutions Coordinator; (15) Frank Maine, SBCC correctional officer; (16) Aaron Gill, SBCC Sargent correctional officer; (17) defendant Ferrarra, SBCC Lieutenant correctional officer; (18) Jeffrey P. Diagneault, SBCC correctional officer; (19) Sargent Fasoli, SBCC correctional officer; (20) James C. Thornton, SBCC superior supervisor; (21) Gregory A. Bedard, SBCC lieutenant with disciplinary office; (22) Shelley Williams, SBCC captain and

shift commander; (23) defendant MacDonald, SBCC Deputy of Security; (24) Michael Rodrigues, SBCC Deputy Superintendent of Operations; (25) Thomas Fedel, SBCC disciplinary officer; and (26) defendant Wendover, SBCC correctional officer.

The complaint contains thirty-two counts under federal and state law. Counts I, III, and V are claims for violation of the Declaration of Rights under the Massachusetts Constitution, Mass. Gen. Law c. 231A. In Count VII, a claim concerning the constitutionality of Mass. Gen. Law c. 276, § 52A is alleged. The remaining twenty-eight (28) counts, Counts II, IV, VI, VIII - XXXII, are claims for cruel and unusual punishment, denial of due process, denial of equal protection, denial of the right to petition for redress of grievances and denial of access to the courts in violation of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

The following facts are alleged in the complaint. On December 2, 2010, Holloman was detained at the Suffolk County Jail on Nashua Street. See Compl., ¶ 31. The following day, on December 3, 2010, Holloman was transferred to MCI Concord. Id. at ¶ 32. Holloman alleges that defendants Clarke, Bender and Deakin knew, or should have known, that their agreement and approval of such a transfer pursuant to [M.G.L. c. 276, §] 52A was unconstitutional. Id. When Holloman's defense attorney communicated to the state court plaintiff's desire to be returned

5

to the Suffolk County Jail, Assistant District Attorney Deakins "pressed the court to keep plaintiff at the DOC state prison." Id. at ¶ 39.

Upon arrival at MCI Concord, Holloman was placed in handcuffs and leg irons, placed in segregation without notice or hearing, and his requests to speak with staff were ignored. Id. at ¶¶ 33-34. Holloman complains that he was left in "inhumane" conditions for 7 days, id. at ¶ 35, causing severe emotional and physical distress. Id. at ¶ 38. Those conditions included "sleeping without a mattress, denied to shower, and being confined to a cell for 24 hours a day without recreation, having no access to the law library or general library, and having no access to the telephone to call his attorney or family." Id. at ¶ 35. When Holloman sought to file a grievance and requested writing materials, he was suddenly transferred, without notice, to the SBCC maximum facility." Id.

Holloman contends that defendants Brodbeck, Maenpaa, Russo, and Gelb knew, or should have known, that plaintiff was denied due process and that the conditions constituted cruel and unusual punishment. Id. at ¶ 36.

On or about December 8, 2010, Holloman was housed in a double-bunked cell with a sentenced inmate. Id. at ¶ 43. Holloman complained to defendant Burdock who instructed him to address his concern to Deputy Superintendent Mendonsa. Id.

6

Holloman's request to Mendonsa for transfer to single cell was denied in writing by defendant Mendonsa.  Id.

On three occasions, on or about September 26, 2011, defendant Palodian refused to mail several of Holloman's letters to his attorney stating that "CPCS-subcontracted lawyer not considered legal."  Id. at ¶ 52.

On October 5, 2011, Holloman filed a mail-related grievance with defendant Tocci, whose summarily denied the grievance in an untimely reply.  Id. at ¶¶ 53-57.

On or about October 20, 2011, Holloman was moved to another housing unit and was again placed in a double-bunked cell with a sentenced inmate.  Id. at ¶ 45.  Holloman contends that his request for a single bunk "was ignored, denied, and rejected by being made subject to punitive treatment and conditions of confinement placed on Awaiting Action status ("AA") isolation segregation to his cell without due process and made to suffer six months loss of contact visits without due process as addressed to him by letter from Mendonsa."  Id. at ¶ 46.

Holloman contends he was forced to speak with his attorney through a non-contact visiting room window.  Id. at ¶ 47. Although he contends that he was placed in segregation for six months without a hearing, id., he alleges that he received a disciplinary report four days later on October 24, 2011.  Id. at ¶ 48.  Holloman complains that the disciplinary report was

7

dismissed without a hearing on November 1, 2011. Id. Holloman alleges that he received no response to his letter to Spencer complaining about Mendonsa. Id. at ¶¶ 49-50.

On October 27, 2011, Holloman attempted to send mail under the "indigent" mail procedures and his mail was returned on the ground that Holloman was not indigent under DOC regulations. Id. at ¶¶ 58-59. Holloman believes defendant Owens is responsible for denying his indigent mail request and failed to respond to his written complaint. Id. at ¶¶ 60-61.

On January 9, 2012, Holloman filed a grievance related to Owens' denial of his indigent mail request. Id. at ¶ 62. O'Dell denied th grievance and the appeal was denied by Mendonsa. Id. LaDouceur concurred with the denial on administrative review. Id.

On June 27, 2012, Holloman had a court appearance scheduled and Frank Maine refused to "buzz the shower door" for him. Id. at ¶¶ 64-65. Aaron Gill of the security move team, in response to Holloman's requests to shower, started yelling at plaintiff and threatened him with bodily harm if he "didn't lock in." Id. at ¶ 65. Holloman contends that Gill's response to his request to speak with the chain of command was to "command his move team to use excessive unnecessary force beating plaintiff in his body with closed fists and knee thrusts while plaintiff was cuffed, and Gill personally extended multiple knee thrusts to plaintiff's groin area..." Id. at ¶ 66 (the "shower incident"). Holloman

8

slumped over and was dragged to the booking area where Suffolk County transportation was waiting. Id.

Holloman alleges that defendants Maine and Lieutenant Ferrara observed the shower incident without stopping Gill. Id. at ¶ 67. Holloman complains that he was forced to appear in court without his legal papers and wearing dirty clothes and shower slippers. Id. at ¶ 68.

The following day, on June 28, 2012, a disciplinary report was filed against Holloman related to the shower incident. Id. at ¶ 76. Holloman contends that the report was filed in retaliation for his attorney complaining about the shower incident by letter and phone call. Id.

The following month, in July 2012, Holloman filed a grievance concerning the shower incident. Id. at ¶ 71. O'Dell rejected Holloman's grievance as "disciplinary non-grievable." Id. Holloman contends that O'Dell applied the wrong classification to the shower incident. Id. Gelb denied Holloman's appeal. Id. at ¶ 72.

In August 2012, Holloman sought further review from Ladouceur regarding the shower incident. Id. at ¶ 73. Holloman complained to Spencer about her slow response and believes that she ultimately rejected his request in retaliation for his complaining to Spencer. Id.

During "staff access" on September 6, 2012, Holloman spoke

9

with Gelb and asked for the "use of force reports" that should have been written concerning the shower incident. Id. at ¶ 74. Gelb refused telling Holloman to go to court, and Gelb subsequently wrote a letter denying the request. Id. at ¶ 75.

Holloman complains that on February 21, 2013, while Holloman was performing his Islamic prayer, Jeffrey Diagneault rudely and disrespectfully banged on the cell door trying to deliver Holloman's mail. Id. at ¶ 79. Diagneault stated in a hostile manner 'you don't want your mail." Id. Holloman alleges that when he didn't answer, Diagneault walked away and called him an "[expletive] spook." Id. at ¶ 80. After Holloman finished his prayer, he called out to Daigneault who was delivering mail at another cell. Id. Daigneault returned to Holloman's cell and responded to Holloman's explanation by stating that he "didn't give [an expletive about Holloman] praying." Id. Holloman responds to Daigneault with an expletive. Id.

Holloman complained about the mail incident to unit officer Shirley who made a telephone call in Holloman's presence about the matter. Id. at ¶ 83. Sometime after 8 p.m., unit officer Shirley delivered Holloman's mail [which had been opened and re-taped closed] stating that Sargent Fasoli said "here's your legal mail nothing should come of the situation." Id. at ¶ 84.

Holloman alleges that after filing a grievance against Daigneault, he retaliated by filing a fabricated disciplinary

10

report against Holloman, causing Holloman to be placed in "awaiting action" status restricted/isolated confinement. Id. at ¶ 86. Holloman complained verbally to Rodrigues and in writing to MacDonald and Gelb, each of whom ignored or dismissed his grievance. Id. at ¶ 87. Holloman alleges that he was placed in various restricted confinement settings including isolation in his cell, housing in disciplinary segregation with full restraints, and administrative segregation for approximately sixty days. Id. at ¶ 88.

The following day, on February 22, 2013, Holloman is denied access to his mail when Wendover, opening the legal mail in Holloman's presence, realizes that the mail contains two books of stamps. Id. at ¶ 94. Although Holloman produced a copy of a court order stating that he is authorized to have the stamps, Wendover explained that Holloman is not allowed to receive stamps and left to check with his supervisor. Id. at ¶¶ 96-97. Wendover returned with the court order but confiscated the legal mail. Id. at ¶ 97. O'Dell denied Holloman's grievance because Holloman was authorized to receive stamps by mail on only a one-time basis. Id. at ¶ 99.

During a disciplinary hearing held on March 7, 2013, Holloman complains that he was not allowed to call witnesses or present witness affidavits. Id. at ¶ 89. His request for a continuance to allow him to collect materials for his defense was

denied by Thomas Fedel.  Id.  He was sanctioned to sixty days' loss of canteen and phone.  Id. at ¶ 91.  Gelb denied Holloman's appeal.  Id.

## DISCUSSION

"Generally speaking, 42 U.S.C. § 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'"  Grapentine v. Pawtucket Credit Union, 755 F.3d 29, 31 (1st Cir. 2014).  To state a claim under that statute, a plaintiff must assert two allegations: (1) "that some person deprived him of a federal right," and (2) that such person "acted under color of state or territorial law."  Id. (citations omitted).  To the extent Holloman asserts claims pursuant to the Massachusetts Constitution, the Supreme Judicial Court has "consistently equated as comparable, both generally and in the prison environment, the due process protections" of the United States Constitution and those provided under Articles 1, 10, and 12 of the Massachusetts Constitution.  Hudson v. Comm'r of Corr., 46 Mass. App. Ct. 538, 543 (1999).

For purposes of preliminary screening, this Court concludes that Holloman has alleged sufficiently plausible claims for excessive force, failure to intervene, retaliation and denial of

due process. Thus, this action will be permitted to proceed as to the claims against defendants Gill, Ferrarra, Maine, Diagneault (retaliation claim only), Mendonsa, Spencer, O'Dell, Gelb, Ladouceur, Owens and Fedel.

Notwithstanding this ruling, Holloman's claims against defendants Deakin, Clarke, Bender, Russo, Brodbeck, Maenpaa, Thornton, Berdard, Williams, Fasoli, Tocci, Palodian, MacDonald, Rodrigues and Wendover shall be dismissed in 42 days of the date of this Memorandum and Order unless Holloman demonstrates good cause in writing why his claims against these remaining defendants should not be dismissed for the reasons set forth below.

A. <u>Limitations Period for Claims Under 42 U.S.C. § 1983</u>

Because "Section 1983 does not contain a built-in statute of limitations[,]" "a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period governing personal injury causes of action." <u>Nieves v. McSweeney</u>, 241 F.3d 46, 51 (1st Cir.2001). Under Massachusetts law, the limitations period for personal injury is three years. See <u>id.</u>; Mass. Gen. Laws c. 260, § 2A. "'Section 1983 claims generally accrue when the plaintiff knows, or has reason to know of the injury on which the action is based, and a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences

13

are felt.'" Gorelik v. Costin, 605 F.3d 118, 122 (1st Cir. 2010) quoting Morán Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008) (internal quotations and citations omitted).

Here, Holloman's Section 1983 claim concerning his transfer from the Suffolk County Jail to MCI Concord and the SBCC as well as first double-bunking assignment occurred in 2010. Holloman alleges that ADA Deakin advocated for his transfer and that Commissioner Clark and Deputy Commissioner Bender should have known that such transfer was unconstitutional. He further alleges that Lois Russo, John Brodbeck and Jorma Maenpaa violated Holloman's right to due process and should have known that the conditions of his confinement at MCI Concord were cruel and unusual.

Because Holloman did not file his lawsuit until June 9, 2014, over six months after the three year statute of limitations expired, these 2010 claims are untimely unless equitable tolling principles apply. Here, Holloman knew of or had reason to know of the allegedly wrongful acts at the time they occurred, which is more than three years prior to the filing of his lawsuit. Therefore, any Section 1983 claims arising out of his 2010 transfer and 2010 double-bunking assignment would be time-barred in the absence of equitable tolling. Thus, the claims against defendants Deakin, Clarke, Bender, Russo, Brodbeck and Maenpaa are subject to dismissal.

Moreover, his challenge to Mass. Gen. Law c. 276, § 52A[1] is subject to dismissal as untimely as well as for failure to state a claim. Section 52A provides for the transfer of a pretrial detainee from a county jail in which he is ordinarily held awaiting trial to a state correctional institution if he has previously been incarcerated in such an institution under sentence for a felony. See Kelley v. Cabral, C.A. No. 06-11837-GAO, 2008 WL 2817100, at *1 (D. Mass. July 21, 2008). The transfer of an eligible pretrial detainee from a county jail to a State correctional institution, under the provisions of § 52A, requires both the approval of the district attorney and the authorization of the commissioner. See MacDougall v. Com., 447 Mass. 505, 508, 852 N.E.2d 1080, 1083 (2006).

B. Legal Mail Incidents

Plaintiff complains of several incidents concerning his

---

[1] G.L. c. 276, § 52A provides: Persons held in jail for trial may, with the approval of the district attorney, and shall, by order of a justice of the superior court, be removed by the commissioner of correction to a jail in another county, and said commissioner shall, at the request of the district attorney, cause them to be returned to the jail whence they were removed. In addition, such persons, if they have been previously incarcerated in a correctional institution of the commonwealth under sentence for a felony, may, with the approval of the district attorney, be removed by the commissioner of correction to a correctional institution of the commonwealth, and said commissioner shall, at the request of the district attorney, cause them to be returned to the jail where they were awaiting trial. The proceedings for such removals shall be the same as for the removal of prisoners from one jail or house of correction to another. The cost of support of a person so removed and of the removals shall be paid by the county whence he is originally removed.

15

legal mail in the Fall of 2011 and in February 2013. "The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). "An incarcerated prisoner, like any other citizen, has a constitutionally protected right of access to the courts." Lewis v. Casey, 518 U.S. 343, 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

To have standing to seek relief under this right, however, a plaintiff must show actual injury by "demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or ... impeded." Id. at 353 (footnote omitted). see also Boivin v. Black, 225 F.3d 36, 43 n. 5 (1st Cir.2000) ("a prisoner must show actual injury in order to demonstrate a violation of the right of access to the courts").

Holloman complains that on three occasions in 2011, defendant Palodian refused to mail Holloman's letters to his attorney stating that "CPCS-subcontracted lawyer not considered legal." Compl. at ¶ 52. At that time, Thomas Tocci failed to timely respond and then denied Holloman's grievance related to denial of mail services. Compl. at ¶¶ 53-57. On February 21, 2013, while Holloman was performing his Islamic prayer, Jeffrey

16

Diagneault refused to deliver his mail, called him an expletive based upon Holloman's race and religion and fabricated a disciplinary report in retaliation for Holloman's filing a grievance against Diagneault. Although unit officer Shirley eventually delivered Holloman's mail, Holloman contends that "officer Shirley stated that Seargent (sic) Fasoli said 'here's your legal mail nothing should come of the situation." Compl. at ¶ 84. Holloman complains that both MacDonald and Rodrigues deny or ignore complaints from Holloman regarding Daigneault. Id. at ¶ 87. Finally, Holloman complains that on February 22, 2013, despite producing a copy of a court order stating that Holloman is authorized to have stamps, defendant Wendover confiscated Holloman's legal mail because it contained stamps.

Here, Holloman's allegations are plainly inadequate to state a viable access to the courts claim, as he fails to specify any actual injury to a nonfrivolous legal action caused by any of defendants. Therefore, the complaint fails to state a viable claim for denial of his right to access to the courts as to defendants Palodian, Tocci, Diagneault, Fasoli, MacDonald, Rodrigues and Wendover.

Moreover, as to defendant Diagneault's alleged derogatory statements, they do not rise to the level of cruel and unusual punishment under the Eighth Amendment. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (racist and sexually explicit

17

statements); see also Johnson v. Unknown Dellatifa, 357 F.3d 539, 546 (6th Cir. 2004) (verbal harassment, absent any resulting physical injury, generally does not amount to infringement of a constitutional right actionable under Section 1983); Shabazz v. Cole, 69 F. Supp. 2d 177, 199-201 (D.Mass. 1999).

C. Claims against Thornton, Berdard and Williams

Although the case caption of the complaint identifies as defendants James C. Thornton, SBCC superior supervisor; Gregory A. Berdard, SBCC lieutenant with disciplinary office; and Shelley Williams, SBCC captain and shift commander, the body of the complaint contains no factual allegations as to these three defendants. Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to include in the complaint, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must afford the defendant a "meaningful opportunity to mount a defense." Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)). "[I]n a civil rights action ..., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).

Here, Holloman has not met the Rule 8(a) pleading

requirements for any claims against defendants Thornton, Berdard and Williams because there are no factual assertions concerning the conduct of these three defendants. To the extent any claims are based upon facts collectively asserted against the defendants, the complaint fails to clearly link specific factual allegations of wrongdoing against defendants Thornton, Berdard and Williams.

ORDER

Based upon the foregoing, it is hereby ORDERED

1. The clerk shall issue summonses with respect to defendants Gill, Ferrarra, Maine, Mendonsa, Spencer, O'Dell, Gelb, Ladouceur, Owens, Fedel, Diagneault;

2. The claims against defendants Deakin, Clarke, Bender, Russo, Brodbeck, Maenpaa, Thornton, Berdard, Williams, Fasoli, Tocci, Palodian, MacDonald, Rodrigues and Wendover shall be dismissed in 42 days of the date of this Memorandum and Order unless Holloman demonstrates good cause, in writing, why his claims against these remaining defendants should not be dismissed;

3. The clerk shall send the summonses, Complaint, and this Memorandum and Order to the plaintiff, who must thereafter serve the defendants in accordance with Federal Rule of Civil Procedure 4(m). The plaintiff may elect to have service made by the United States Marshal Service. If directed by the plaintiff to do so, the United States Marshal shall serve the summonses, Complaint, and this Memorandum and Order upon the defendant, in the manner directed by the plaintiff, with all costs of service to be advanced by the United States Marshal Service; and

4. Notwithstanding Fed. R. Civ. P. 4(m) and Local Rule 4.1, the plaintiff shall have 120 days from the date of the issuance of summonses to complete service.

SO ORDERED.

```
 April 15, 2015                          /s/ Douglas P. Woodlock
DATE                                    DOUGLAS P. WOODLOCK
                                        UNITED STATES DISTRICT JUDGE
```